## No. 13,784.

### NICOLOFF v. BLOOM LAND AND CATTLE COMPANY.
(66 P. [2d] 333)

Decided March 1, 1937. Rehearing denied March 29, 1937.

Mr. Fred S. Caldwell, for plaintiff in error.

Messrs. McHendrie, Shattuck & Pointer, for defendant in error.

*In Department.*

Mr. Justice Bouck delivered the opinion of the court.

As owner of certain lands in Las Animas county, the Bloom Land and Cattle Company brought suit to restrain one Nicoloff from interfering with, intercepting, or diverting certain waters described as "flood waters, waste waters, spring waters, seepage, and underground waters" and alleged to have been theretofore already intercepted, captured, and appropriated by the company and its predecessors in title, by means of their so-called Old Riley Dunton ditch as a conduit, for the purpose of growing crops on their lands. The district court found in favor of the plaintiff company and entered judgment in its favor. This judgment Nicoloff asks us to reverse.

The company owned the upper and the lower Bloom Ranch, so-called, both together covering more than 300 acres. Under a 1903 decree that is not in any way questioned, it owned an early priority whereby it had diverted 6 cubic feet of water per second from the Las Animas river by means of its aforesaid ditch. Later, under a decree of 1908, the point of diversion was duly changed to the headgate of the Hoehne ditch, the other ditch being thereafter used as a lateral. This decreed priority, however, is not the subject of contention. The waters in controversy here are the waters above described, consisting principally of seepage.

The land above the old ditch had a pronounced southeasterly dip down toward the river. Considerable seepage and flood waters came down each year on and beneath the surface of the sloping land. There was evidence tending to prove that for decades all these waters had been

captured by the company and its grantors in their old ditch, and had been duly appropriated for irrigation on their ranches. While after the capture these waters necessarily mingled with the water diverted from the river through the Hoehne ditch under the decreed priority, and flowing through the old ditch as a lateral, the company claimed the former waters independently of and in addition to the latter.

The Old Riley Dunton ditch was approximately parallel with the river, and some distance above it. Farther up the slope, Nicoloff in 1934 dug a ditch practically parallel with, but higher than, the company's ditch, the two being separated by a strip of land varying from 12 to 40 feet in width. There was also evidence tending to prove that the seepage and flood waters which the company claimed to have thus appropriated were wrongfully intercepted and diverted by Nicoloff's ditch, which carried them off to certain fish ponds owned by him below the company's old ditch. Nicoloff's answer denied that the company had made a valid appropriation, and alleged that the waters in controversy first arose on his own tract of about eleven acres and that he has himself made a valid appropriation of them. On these points the evidence is in sharp conflict.

Nicoloff originally contended that the company's alleged appropriation of the captured waters was invalid for failure to comply with sections 1644 to 1648, inclusive, and section 1650, of C. L. 1921. The contention has been abandoned, not being argued in the briefs. Another contention was that the general adjudication decree of 1903 and a decree of 1925 constitute res judicata and settle the amount of water to which the company is now entitled and that this amount cannot be increased by an undecreed priority as now claimed. Undoubtedly the decree measured the rights of the company as to river water at the time. It would not be permissible to vary the decree in that regard by parol testimony. On the other hand, the decree simply adjudged the amount of

water which the Old Riley Dunton ditch was entitled to take direct from the river for irrigation of lands under the appropriation which had actually been made prior to the time the decree was entered. It does not curtail the right of the landowner to make further appropriations as needed; and any such further appropriation is not defeated by the fact that it has not yet been, and may never be, protected by a decree, unless of course one claiming adversely should hereafter successfully attempt to obtain a decree for priority as to the same water in a proper proceeding.

The only question now before us is therefore whether there is sufficient evidence to sustain the judgment.

No error is assigned on the admission or rejection of any evidence. The evidence in the record being in substantial conflict on all the material issues of fact, the district court's determination of these in favor of the company is binding upon us, and requires us to affirm the judgment rendered. We do not overlook the assignments of error whereby Nicoloff complains that the lower court struck out of the amended answer certain affirmative defenses, which, by invoking the doctrine of res judicata, sought to raise the questions above referred to in relation to the decree establishing the right of the company or its predecessors to a priority in the river water. In view of what we have already said on the subject, the trial court was right in thus striking out the affirmative defenses. The decrees, as evidence, were accorded the full effect which either party was entitled to give them; they could not properly, under all the evidence before us, serve any other purpose.

Judgment affirmed.

Mr. Chief Justice Burke and Mr. Justice Young concur.