23CA1602 Marriage of Fibiger 09-19-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1602
City and County of Denver District Court No. 22DR30695
Honorable Andrew P. McCallin, Judge

---

In re the Marriage of

Michael John Fibiger,

Appellee,

and

Tristen Anne Rogers,

Appellant.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE TOW
Pawar and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 19, 2024

---

Polidori, Franklin, Monahan & Beattie, LLC, Robin Lutz Beattie, Lakewood, Colorado, for Appellee

Schaffner Law LLC, Jennifer Schaffner, Greenwood Village, Colorado; Griffiths Law PC, Kimberly A. Newton, Lone Tree, Colorado, for Appellant

¶ 1     In this dissolution of marriage case between Tristen Anne Rogers (wife) and Michael John Fibiger (husband), wife appeals the portion of the district court's judgment that awarded maintenance and divided the marital estate. We affirm the judgment and remand the case for further proceedings on wife's request for appellate attorney fees and costs.

## I.     Background

¶ 2     The parties married in 2012. A few years later, wife inherited over $2.3 million from her father. Following this inheritance, wife left her full-time job and started a business coaching endurance athletes. Husband worked as a financial advisor.

¶ 3     In 2023, the district court dissolved the marriage and entered permanent orders. The court found that wife had gifted all but $370,000 of her inheritance to the marriage. It explained that the parties used her inheritance to purchase significant marital property, fund four jointly owned TD Ameritrade investment accounts, and financially support their lifestyle.

¶ 4     The court then divided the approximately $3 million marital estate disproportionately in wife's favor. It allocated to wife the marital home, a home in Fairplay, bank accounts, life insurance

policies, retirement accounts, her business, and a few other assets. In doing so, the court allocated to wife the marital appreciation in two individual retirement accounts (IRAs) that wife inherited from her father and set aside to her over $300,000 in the IRAs as her separate property. The court allocated to husband the TD Ameritrade investment accounts, a home in Steamboat Springs, and other bank accounts, life insurance policies, and retirement accounts along with a few other assets. In total, wife received net marital equity worth over $1.9 million, and husband received the remaining $1 million.

¶ 5     Moving to maintenance, the court found that husband's gross income was $14,201 per month, and it found that wife's gross income was $5,726 per month, which included her wages, business income, and income from an inherited life insurance policy. The court determined that based on these incomes, the advisory guideline amount of maintenance was $1,683 per month. The court, however, determined that the guideline amount of maintenance was not warranted. The court highlighted that the parties historically used funds from wife's inheritance to support their lifestyle and standard of living during the marriage, and it

found that she could continue to do so. The court then awarded wife maintenance in the amount of $842 per month.

## II.    Maintenance

¶ 6    Wife contends that the district court erred by awarding her $842 per month in maintenance. We disagree.

¶ 7    When awarding maintenance, the court must determine an amount and term of maintenance that is fair and equitable based on the parties' needs and circumstances. § 14-10-114(3)(a)(II), (3)(e), C.R.S. 2023. In doing so, the court considers the advisory guideline amount of maintenance. § 14-10-114(3)(a)(II)(A), (3)(b)(I)(C). This guideline is a starting point; it does not create a presumptive maintenance amount. § 14-10-114(1)(b)(II), (3)(e). The court then considers a nonexclusive list of statutory factors and determines an appropriate maintenance amount based on the totality of circumstances. § 14-10-114(3)(a)(II)(B), (3)(c), (3)(e).

¶ 8    We review a court's maintenance determination for an abuse of discretion. *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 58. A court abuses its discretion when it acts in a manifestly arbitrary, unfair, or unreasonable manner, or it misapplies the law. *Id.* at ¶ 28. We will not disturb a court's decision when the record

supports it. *In re Marriage of Atencio*, 47 P.3d 718, 722 (Colo. App. 2002).

¶ 9    Wife suggests that the court determined the amount of maintenance "based solely" on its expectation that she could use her inheritance to support her financial needs. While the court highlighted the parties' historic use of her inheritance, this was not the only circumstance considered by the court when determining maintenance. The court also considered the parties' incomes, the disproportionate allocation of marital property in wife's favor, and wife's significant financial resources, which included over $1.9 million in marital equity and $370,000 in separate property. *See* § 14-10-114(3)(c)(I), (IV), (V). The court further noted the parties' contributions to the marriage, husband's financial resources, and the parties' lifestyle during the marriage. *See* § 14-10-114(3)(c)(II), (III), (X). The court thus determined a fair and equitable amount of maintenance based on the totality of circumstances. *See* § 14-10-114(3)(e).

¶ 10   Still, wife argues that the record does not support the court's finding that she could continue to support her financial needs with her inheritance. To get there, she asserts that the court relied on

4

the parties' historical use of the TD Ameritrade investment accounts to find that they used her inheritance during the marriage but that the court allocated those investment accounts to husband. However, the record reveals that the TD Ameritrade investment accounts were not the only assets from her inheritance that the parties used to sustain their lifestyle. Husband testified that wife also used "distributions from [her] inherited IRAs" to pay expenses. And the evidence showed that wife received over $8,600 in distributions from the inherited IRAs in 2022 and that the parties regularly received such distributions during the marriage. Because wife retained these inherited IRAs, the court reasonably determined that she could continue to use her inheritance to support her financial needs. *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (recognizing that the district court determines the credibility, weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom).

¶ 11    Wife also argues that the "evidence contradicts the court's finding" that she used her inheritance to financially support the parties during the marriage. Even though wife claimed that husband used her inheritance without her knowledge or

5

involvement, the court rejected that claim and, instead, found that "wife had to know that her inherited property was being used to acquire marital property and to supplement the parties' lifestyle and standard of living." We must defer to this determination when, as here, the evidence supports it. *See id.*; *see also In re Marriage of Evans*, 2021 COA 141, ¶ 45 ("We are not at liberty to re-evaluate the conflicting evidence and set aside findings supported by the record."). Indeed, husband testified that the parties used funds from wife's inheritance to acquire marital property, fund wife's business, and pay their living expenses. And he said that wife knew of and authorized their use of the inheritance and that they could not have supported their standard of living without it.

¶ 12    Nor do we agree with wife's suggestion that the court's maintenance determination improperly required her to deplete her assets to satisfy her reasonable needs. True, wife is "not required to consume her portion of the marital estate before being entitled to maintenance." *In re Marriage of Sewell*, 817 P.2d 594, 597 (Colo. App. 1991). But the court did not determine that wife was not entitled to maintenance at all because of these funds. The court merely determined that the parties' historical use of these funds

6

helped inform the amount of maintenance wife would require. We are aware of no case law that suggests a court cannot take such established practice during the marriage into account when determining the amount of maintenance.

¶ 13　　To the contrary, as discussed above, the court found, with record support, that wife historically used her inheritance to satisfy their financial needs, and it could properly consider this established lifestyle when determining an equitable maintenance amount. *See* § 14-10-114(3)(c)(III).　Moreover, the court recognized that the parties' historic use of the inheritance did not negatively impact the overall value of their assets and that they, instead, had grown their estate.　The court thus reasonably inferred that given their customary practice, wife could rely on assets from her inheritance to support her financial needs. *Cf. In re Marriage of Jones*, 627 P.2d 248, 253-54 (Colo. 1981) (reversing a court's maintenance order when the court did not consider the income a party could generate from her property).

¶ 14　　To the extent wife generally asserts that the "court erred in calculating [her] income," she does nothing to legally or factually develop that argument.　We therefore will not further address it.

*See In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 29.

¶ 15    The district court thus acted within its discretion when it awarded wife maintenance in the amount of $842 per month.

### III.    Property Division

¶ 16    Wife next contends that the district court erred by finding that the parties agreed her business was worth $17,000. We discern no reversible error.

¶ 17    When allocating marital property, the court determines an approximate current value of the parties' assets. *In re Marriage of Wright*, 2020 COA 11, ¶ 4. The court may select one party's proposed value over that of the other party, or the court may determine its own value, and we will not disturb its decision when the value is reasonable in light of the evidence as a whole. *Medeiros*, ¶ 41; *see also LaFleur v. Pyfer*, 2021 CO 3, ¶ 61 (recognizing the district court's discretion over property division).

¶ 18    The parties informed the court that they agreed to the present values for the assets identified on wife's proposed property division spreadsheet. While this spreadsheet did not state a specific value for wife's business, it suggested that the business had no value.

8

Then, during the hearing, husband testified that he believed the value of wife's business was $17,000 (the value of the business' assets) and that it was subject to the court's allocation.

¶ 19    The court made no express findings on the business' value. Rather, after addressing the other assets, the court said that the "parties agreed to the nature, value and allocation of the remaining property and debt identified on the attached property allocation spreadsheet," and, on that spreadsheet, the court listed the business' value as $17,000.

¶ 20    The court thus appeared to accept husband's value for wife's business. *See Medeiros*, ¶ 41. While the court may have misstated the parties' agreement to that value, any error in the court's misstatement was harmless. An appellate court may disregard any error or defect in a dissolution proceeding when the aggregate effect of the error does not affect the parties' substantial rights. *See* C.A.R. 35(c); *see In re Marriage of Balanson*, 25 P.3d 28, 36 (Colo. 2001). A court's error when dividing the marital estate that impacts only a small percentage of the overall marital estate does not affect the parties' substantial rights. *Balanson*, 25 P.3d at 36.

¶ 21    The overall marital estate was worth almost $3 million. Thus, any error by the court in valuing the business at $17,000 (as compared to $0) amounts to less than 1% of the marital estate. Such a small error does not warrant reversal. *See id.* at 38 (suggesting that an error affecting less than 2% of the overall marital estate is harmless).

## IV.    Appellate Attorney Fees and Costs

¶ 22    Wife requests an award of attorney fees and costs on appeal based on the disparity in the parties' financial resources. *See* § 14-10-119, C.R.S. 2023; *In re Marriage of Collins*, 2023 COA 116M, ¶ 86. However, the district court is better equipped to address the factual issues associated with this request, and we thus remand it to the district court. *See* C.A.R. 39.1; *Collins*, ¶ 86.

¶ 23    Costs are taxed in accordance with C.A.R. 39(a)(2).

## V.    Disposition

¶ 24    We affirm the district court's judgment and remand the case for further proceedings on wife's request for appellate attorney fees and costs.

JUDGE PAWAR and JUDGE SCHUTZ concur.